Brinkerhoff, J.
The general assembly of the state has assumed .to enact laws creating the office of inspector of gas-meters and illuminating gas, and to provide for the payment of the salary of the officer, and of the expenses for the procurement of the apparatus necessary for the discharge of his duties, by an assessment upon the several gas companies in the state, in proportion to the amount of capital which said companies respectively have invested in the manufacture and sale of gas; and the plaintiff in error prosecutes its petition in error here to contest the validity of these enactments, claiming that they are in contravention of the second .section of the twelfth article of the constitution of the'state, which provides “ that laws shall be passed, taxing by a uniform rule all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise; and also all real and personal property, according to its true value in money,” etc.
It is settled by the repeated decisions of this court, in Hill v. Higdon, 5 Ohio St. 243; Reeves v. The Treasurer of Wood Co., 8 Ohio St. 333; and Baker v. the City of Cincinnati, 11 Ohio St. 534, that the section of the constitution just referred to is only applicable to, and furnishes the governing principle for, all laws levying taxes for general revenue, whether for state, county, township, or municipal corporation purposes.
*243 Now, although the assessment or charge upon the gas companies of the state imposed by the statute in question may be a tax, in the widest import of the word, it certainly is not a tax for purposes of general revenue. It is the assessment of a charge for a special purpose growing out of the exercise of the supervisory power of the government over the business in which these companies are engaged. The above section of-the constitution is, in effect, a mandate upon the legislature that all property, of every nature, shall be taxed by a uniform rule ; but the charge or assessment here complained of is not a tax on property, but rather a charge upon individual corporations — artificial persons — and the-business in which they *are engaged; and it by no moans [243 follows, that because the state is compelled to tax all property by a uniform rule, that it is therefore cut off from all power to lay assessments and charges for exceptional and special purposes coming-clearly within the general legislative power conferred by the constitution upon the general assembly. As was said by Gholson, J., in the case last above cited, " an express direction to impose a tax on all property by a uniform rule, does not necessarily exclude-taxation upon that which is not property.” It is settled by authoritative decision that, under the present constitution of the state, local assessments may be made to pay for lands appropriated for streets within the limits of municipal corporations, and for their improvement and repair; for the making of ditches and drains, and free turnpike roads outside of such corporations; and that charges may be imposed for licenses to theaters. We have several other laws imposing and authorizing charges on particular branches of business, through the medium of licenses, which can be obtained only by paying for them ; which laws are supposed to be in full force, and the validity of which, so far as I know, have never been questioned. And the same may be said of the levying of duties-on auction sales.
Not identical with, but coming within the same category as the-laws just mentioned, imposing charges upon persons engaged in-particular branches of business, are inspection laws. Such laws, providing for the appointment of inspectors, and for the inspection of articles of manufacture and trade, we have had upon our statute books from the time of the formation of the state government until the present time. They have been enacted under both the old and the new constitution; their validity has remained unquestioned *244 until now. The list of articles of manufacture and trade subject tc inspection has varied, at different times, but includes, altogether, -wheat and rye-flour, Indian and buckwheat-meal, biscuit, lard, pork, beef, pot and pearl ashes, fish, domestic spirits, oil, salt, and perhaps ■other articles which I have overlooked. They make the duty to procure the inspection of the articles named compulsory upon manufacturers and dealers in many cases, and they provide for the com-'244] pensation of ^inspectors by the imposition of fees upon the parties for whom the inspection is made.
The enactment of laws for the inspection of commodities, is the ■exercise of a legislative power recognized and sanctioned by long .and unquestioned usage here and elsewhere, and is included in the .general grant of legislative power conferred by the constitution upon the general assembly; and among the general, and I believe •the invariable, incidents and characteristic features of this class of laws, is the imposition of a charge upon the owners or possessors ■of the commodities inspected for the services of the inspector, .although these services may have been rendered in invitum as to .such owner or possessor. It is the legitimate exercise of governmental supervision over the business of the manufacturers and ven•dors of certain commodities, in order to pi'otect the public at home and abroad against imposition and fraud, and incidentally to protect manufacturers and vendors themselves against unfounded and unjust claims of vendees and consumers, as well as against the consequences of their own short-sighted cupidity.
Illuminating gas is a discovery of modern times, its manufacture and sale is a business comparatively new, and legislation for its inspection and measurement must therefore be new in its details, and peculiar to the subject-matter. This is, of course and necessarily, true of the act here in question, yet it is, after all, but one of our .inspection laws, resting on the same principles, originated and governed by the same policy, characterized by the same features, and .authorized by the same grant of legislative power as preceding laws ■of the same class.
It is argued in behalf of the plaintiff in error, that because the .amount of assessment on individual companies is graduated by the .amount of capital invested by each in the manufacture and distribution of gas, therefore the assessment is to be held to be a tax upon the capital or property invested, and so within the purview of the ¡section of the constitution above referred to. We do not so regard *245, 246 It. We have already seen that it is a general if not an invariable characteristic of former inspection laws, that they provide for the ■compensation *of the inspector by a charge in the form of [245 fees upon the manufacturer, vendor, or possessor of the commodity inspected; but by the law now in question, the salary and cost of necessary apparatus of the inspector are assessed or charged on gas •companies respectively, according to the amount of capital by each of them invested in the business in which they are engaged. The •inspection of the quality of gas, and the testing of the instrumentalities for its measurement, are peculiar; and it may well be that no method of providing a fair compensation for the services of the inspector could be afforded by fees imposed for particular things ■done or acts performed. In respect to this matter, a large discretion must of necessity be left to the legislative power of the government. The presumption is that the legislature, in the exercise of its discretion, regarded the method of assessment which it has adopted as the nearest approximation to a just and equitable charge upon the •different companies, for the services rendered by the inspector, which the peculiar chai’acter of the duties to be performed by him would permit. In principle, there is no difference between the •charge of fees for the particular acts of service rendered, and the measurement of compensation here adopted; and we can not assume to control or supervise that which is a matter of mere legislative •discretion.
The seventh section of the act in question requires that “ there shall be provided, at the expense of the gas companies of this state, at the office of the inspector, a standard measure of the cubic foot, and such other apparatus as in his judgment shall be necessary for the faithful performance of the duties of his office.” It is by this section provided that the standard measure of the cubic foot, and other necessary apparatus, shall be furnished at the expense of the gas companies; but it does not expressly provide by what rule this expense shall be apportioned, nor in what mode it shall be enforced against the gas companies. We are of opinion, however, that by fair and reasonable implication and intendment, from the terms of the act as a whole, it may be well assumed that this expense is to be apportioned in accordance with the same rule, and enforced in the same manner, as is provided in respect to the salary proper of the inspector.
*We are of opinion that the act in question, as it stands [246 *247 amended, is not in conflict with any provision of the constitution ;; that there is no error in the judgment and proceedings cf the court, below, and that the same ought to be affirmed.

Judgment accordingly.

Day, C. J., and Scott, Welch, and White, JJ., concurred.